IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

KENNETH E. GREEN,

Plaintiff,

vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

Defendant.

Civil Case No. 07-1199-KI

OPINION AND ORDER

Linda S. Ziskin
3 Monroe Parkway, Suite P, PMB #323
Lake Oswego, Oregon 97035

Attorney for Plaintiff

Karin J. Immergut
United States Attorney
District of Oregon
Britannia I. Hobbs
Assistant United States Attorney
1000 S. W. Third Avenue, Suite 600
Portland, Oregon 97204-2904

Richard A. Morris
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, Washington 98104-7075

Attorneys for Defendant

KING, Judge:

Plaintiff Kenneth Green brings this action pursuant to section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner denying plaintiff's application for disability insurance benefits ("DIB"). I reverse the decision of the Commissioner and remand for further proceedings.

**DISABILITY ANALYSIS**

The Social Security Act (the "Act") provides for payment of disability insurance benefits to people who have contributed to the Social Security program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1). In addition, under the Act, supplemental security income benefits may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act. 42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind

of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability. The claimant has the burden of proof on the first four steps. Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007), cert. denied, 128 S. Ct. 1068 (2008); 20 C.F.R. §§ 404.1520 and 416.920. First, the Commissioner determines whether the claimant is engaged in "substantial gainful activity." If the claimant is engaged in such activity, disability benefits are denied. Otherwise, the Commissioner proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c) and 416.920(c). If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) and 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past. If the claimant is able to perform work which he or she performed in the past, a finding of

"not disabled" is made and disability benefits are denied. 20 C.F.R. §§ 404.1520(e) and 416.920(e).

If the claimant is unable to perform work performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his or her age, education, and work experience. The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. Parra, 481 F.3d at 746. The claimant is entitled to disability benefits only if he is not able to perform other work. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

## STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards. Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). Substantial evidence is more than a "mere scintilla" of the evidence but less than a preponderance. Id. "[T]he commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision." Batson v. Barnhart, 359 F.3d 1190, 1193 (9th Cir. 2003) (internal citations omitted).

## THE ALJ'S DECISION

The ALJ acknowledged that the case was before him on remand from the Appeals Council after its review of his prior decision. He specified the four areas the Appeals Council instructed him to address. The ALJ determined that Green had a severe impairment of arthritis of the left hip with a total hip replacement. He also concluded that the following impairments were nonsevere: coronary heart disease; laryngeal cancer and melanoma of the tongue; arthritis in his

back, shoulders, hips, and knees; profound loss of vision in his left eye; mild depression and anxiety; obesity; loss of hearing; and speaking difficulties due to dry mouth. The ALJ also found that these impairments, either singly or in combination, were not severe enough to meet or medically equal the requirements of any of the impairments listed in Appendix 1, Subpart P of the Social Security Regulations. Based on a review of the medical record, the ALJ concluded that Green could perform sedentary work with a few additional exertional limitations. Based on vocational expert testimony, the ALJ found that Green could perform his past work as a customer service representative and security monitor and, thus, was not disabled under the Act.

## FACTS

Green alleges that he has been disabled since May 4, 2003 due to melanoma on his tongue, laryngeal cancer, a blind left eye since the age of two, a total replacement of his left hip, four ruptured discs, arthritis and spondylolisthesis[1] of the lumbar spine, trochanteric[2] bursitis, piriformis[3] syndrome, problems in his shoulders and knees, depression, anxiety, and a history of a minor heart attack. He was 58 years old at the time of the second decision and had one year of college. Green worked as a fraud representative, grocery clerk, plumbing warehouse runner, counter clerk, and security monitor/gate guard. Green's last full-time job, as a customer service representative, ended when the bank went out of business and laid off all employees. He also

---

[1] Spondylolisthesis is the "forward displacement of a lumbar vertebra on the one below it and especially of the fifth lumbar vertebra on the sacrum producing pain by compression of nerve roots." Merriam Webster's Medical Desk Dictionary 762 (1996).

[2] The trochanter is at the upper part of the femur, at the hip. Merriam Webster's Medical Desk Dictionary 834 (1996).

[3] The piriformis is a muscle, inserted into the upper border of the greater trochanter of the femur, which rotates the thigh. Merriam Webster's Medical Desk Dictionary 625 (1996).

worked 20 hours a week for six months in 2004 in a retraining program at which he helped people put together resumes and search for jobs. Once the training period was over, however, the group was unable to place Green in a job.

On a typical day, Green gets up at 10:00 AM, works on the computer a while, does some housework, naps for two or three hours, watches television with his wife, and goes to bed by 9:30 PM. He can prepare simple meals, do laundry, wash dishes, mow the lawn, drive, and shop for groceries. About once a month, Green goes out to a show or dinner. His pain has caused him to reduce his activities and drop some hobbies. Green can walk a block before needing to rest five to ten minutes and sometimes uses a cane. He bowls once a week.

Green has had surgery on his neck in the early 1990s to treat cancer, back surgery in 1978, and a full left hip replacement in 2002. Green feels burning and aching pain in his leg, back, hips, and shoulders most of the time. The pain is controlled with acetaminophen with codeine, physical therapy, and a narcotic patch, but he is never pain-free. Green claims that he cannot return to his last job as a customer service representative because he cannot sit for long periods due to his shoulder and hip pain.

## DISCUSSION

### I. Green's Credibility

Green contends that the ALJ improperly evaluated his credibility. He notes that his activities are not performed on a full-time, sustained basis in a competitive employment environment. Green argues that even though he was laid-off from his last job, he had been reassigned to a "paper-shuffling" job because he was having difficulty listening and speaking to customers prior to the lay-off.

The Commissioner argues that the ALJ gave clear and convincing reasons for his credibility determination.

When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-stage analysis. In the first stage, the claimant must produce objective medical evidence of one or more impairments which could reasonably be expected to produce some degree of symptom. Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007). The claimant is not required to show that the impairment could reasonably be expected to cause the severity of the symptom, but only to show that it could reasonably have caused some degree of the symptom. In the second stage of the analysis, the ALJ must assess the credibility of the claimant's testimony regarding the severity of the symptoms. If there is no affirmative evidence of malingering, the ALJ may reject the claimant's testimony "only by offering specific, clear and convincing reasons for doing so." Id.

The ALJ reasoned that Green's subjective symptom testimony is not supported by the objective medical findings or any other corroborating evidence. Although the ALJ cannot reject subjective pain testimony solely because it was not fully corroborated by objective medical evidence, medical evidence is still a relevant factor in determining the severity of the pain and its disabling effects. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001). None of the physicians have stated that Green cannot work. Thus, the discrepancy with the objective medical findings is a valid reason for the ALJ's decision, when combined with the other reasons.

The ALJ noted that Green's treatment has been conservative and generally successful. Green has had several surgeries but all except the hip replacement surgery were over ten years before his alleged onset date. Green returned to work after the hip replacement surgery and has

been treated since then with pain medication and physical therapy. The ALJ's reason is supported by the record. See Parra, 481 F.3d at 750-51 (evidence of conservative treatment, consisting of the use of over-the-counter pain medications, is sufficient to discount a claimant's testimony on the severity of an impairment).

The ALJ also reviewed the list of daily activities he attributed to Green. Many of the activities listed by the ALJ are supported by the record but others are not. The ALJ believed that Green continued to engage in his hobbies of photography, making models, and hooking rugs. Both Green and his wife stated that he used to spend time on these hobbies but cannot now do so because of his symptoms. The ALJ did correctly report that Green does some housework, cares for his tropical fish, watches television, uses a computer, mows the grass, and bowls weekly. The record supports the ALJ's reason but not to the full extent stated in his opinion.

Finally, the ALJ noted that Green had some limited work activity after his alleged onset date and left his customer service representative job due to a company-wide lay-off rather than because of his disabling symptoms.

The record supports this reason for discounting Green's credibility. Green worked half-time after his alleged onset date. Although this is not sufficient to disqualify Green from being declared disabled, it is indicative of his stamina and ability to work with the level of pain he experiences. Further, Green ties his alleged onset date to the date of his lay-off. He is forthright in explaining that he left this position because the bank closed and his job ended. Nowhere does Green state that he left this job because his symptoms prevented him from working. I find the ALJ's reason to be quite persuasive.

The fact that the ALJ improperly considered some reasons for finding plaintiff's credibility undermined does not mean that the ALJ's entire credibility assessment is improper. Batson, 359 F.3d at 1197. Considering the legally and factually sufficient reasons in total, the ALJ gave specific, clear, and convincing reasons for rejecting Green's subjective symptom testimony.

II. Lay Testimony

Green argues that the ALJ erred by improperly rejecting the testimony of a lay witness, his wife Jerri. According to Green, the fact that the lay witness has a personal relationship with him is not a legitimate reason to discredit her. Green also complains that a lay witness is not required to demonstrate any expertise as a prerequisite to testifying.

The Commissioner does not argue that the ALJ gave proper reasons for rejecting Jerri Green's testimony. Instead, the Commissioner contends that her report provides no significant or probative evidence for the relevant period that would overcome the ALJ's findings.

Lay testimony about a claimant's symptoms is competent evidence which the ALJ must take into account unless he gives reasons for the rejection that are germane to each witness. Stout v. Commissioner of Soc. Sec. Admin., 454 F.3d 1050, 1053 (9th Cir. 2006). A legitimate reason to discount lay testimony is that it conflicts with medical evidence. Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001).

Jerri Green describes her husband's day as getting up around 10:00 AM, watching some television, spending 30 to 60 minutes on the computer, napping for one to three hours, lunch and a little housework, another nap for two to three hours, dinner and television with her, and bed by 9:00 PM. She states that Green can do laundry, mow the grass on a riding mower, and clean the

house but that he works very slowly. Jerri Green states that her husbands is often angry and short-tempered since his pain has gotten worse. Lifting, squatting, bending, reaching, and walking cause him a lot of pain.

The ALJ viewed Jerri Green's statement "with caution" because she has a personal relationship with Green and "possesses neither the expertise nor the motivation to offer an objective or functional assessment." Tr. 22.

I agree with Green that the ALJ's reasons to discount Jerri Green's testimony are inadequate. An ALJ cannot reject testimony of family members as biased. Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996). Moreover, a lay witness, by definition, does not have medical expertise.

"[W]here the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." Stout, 454 F.3d at 1056.

Jerri Green testified that her husband was only awake for five to eight hours a day. If I credit her testimony, I cannot conclude that no reasonable ALJ would have found Green disabled. Thus, the ALJ's error is not harmless.

III. Step Two Finding

Green argues that the ALJ failed to make proper findings at Step Two by failing to conclude that some of his impairments were severe.

The threshold at step two is a low one. It is a "de minimis screening device [used] to dispose of groundless claims." Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005) (internal

quotation omitted). A medically determinable impairment must be established through signs, symptoms, and medically acceptable clinical or laboratory findings but under no circumstances can be established through symptoms, namely the individual's own perception of the impact of the impairment, alone. Ukolov v. Barnhart, 420 F.3d 1002, 1005 (9th Cir. 2005).

A. Back and Hip Problems

Green notes that the ALJ made no findings at all about his spondylolisthesis with four fused vertebrae, trochanteric bursitis, piriformis syndrome. Green claims that these impairments affect his ability to walk to the extent that he could not perform a sedentary job, which calls for the ability to stand and walk for two out of eight hours per day.

The Commissioner acknowledges that the ALJ did not specifically address spondylolisthesis but did note the medical evidence reflecting the disc surgery and arthritis pain in Green's back, shoulders, hips, and knees. The Commissioner argues that the ALJ did not err in finding that these problems did not significantly limit the ability to work, based on the conservative treatment Green received.

The ALJ did find that Green had a severe impairment of arthritis of the left hip with a total hip replacement. Green also has a history of back surgery. He was receiving pain medication and physical therapy. Thus, he has a medically determinable impairment established through signs, symptoms, and medically acceptable clinical findings. A severe impairment must significantly limit the claimant's ability to perform basic work activities, 20 C.F.R. §§ 404.1520(c) and 416.920(c), but the threshold is low. The ALJ did not sufficiently distinguish between the hip replacement and the spondylolisthesis with four fused vertebrae,

trochanteric bursitis, piriformis syndrome. I conclude that the ALJ gave insufficient reasons for failing to conclude that these last three impairments are severe.

B. Cancers in the Throat and Speaking Problems

Green relies on his testimony about the limitations caused by the surgery and radiation used to treat the cancers in his neck. He claims that he must constantly drink water because his saliva glands were destroyed and that he has difficulty articulating words at times because of the loss of part of his tongue.

The Commissioner argues that the ALJ was correct to find that the cancer surgery resulted in no particular residual impairment. He also argues that Green had the surgery in 1991 but worked until 2003, including working from 1996 until 2003 as a customer service representative, a job the vocational expert testified required continuous speaking.

Because Green worked in a job requiring continuous speaking from 1996 until 2003, I agree with the ALJ that the effects of the cancer treatment did not significantly limit Green's ability to perform basic work activities. The ALJ did not err by failing to designate Green's speaking difficulties as a severe impairment.

C. Hearing Loss

Green also claims that his hearing loss is a severe impairment which causes him trouble hearing conversations, either in person or on the phone.

The Commissioner relies on the ALJ's reasoning that Green testified that the use of hearing aids significantly improved his hearing and stopped the ringing in his ears.

There is no evidence that Green continued to have difficulty hearing conversations after he got the hearing aids, and he affirmatively testified that the hearing aids were a significant

improvement. Although Green was transferred to a paper-shuffling job after his hip replacement surgery, there is no evidence other than Green's testimony that his hearing difficulties were the reason. The ALJ properly discredited Green's testimony. Thus, there is no evidence that his hearing loss significantly limited Green's ability to perform basic work activities. The ALJ did not err by failing to designate Green's hearing loss as a severe impairment.

D. Obesity

Green contends that the ALJ failed to properly consider the issue of his obesity at Step Two and all other steps of the evaluation. He claims that his problems with his hips, low back, knee, and depression are the kinds of impairments ALJs are directed to watch for when considering the exacerbating effect of obesity on other impairments.

The Commissioner argues that the ALJ considered the effects of Green's obesity and correctly concluded that the record did not reflect any functional limitations associated with the obesity. The Commissioner notes that no physician stated that Green was functionally limited by obesity, and the ALJ assessed significant functional restrictions by limiting Green to sedentary work with some additional postural limitations. The Commissioner also notes that Green did not testify that his obesity exacerbated his other conditions.

The ALJ noted that Green had been diagnosed as obese and stated: "It should be noted the record fails to reflect functional limitation associated with the claimant's obesity. Significantly, the claimant's obesity does not adversely impact his ability to perform basic work activity at a sedentary exertion level." Tr. 21.

Green does not point to any places in the record which discuss limitations associated with his obesity, including his own testimony. Instead, he relies on Celaya v. Halter, 332 F.3d 1177

(9th Cir. 2003) to argue that the ALJ cannot expect that express functional limitations will be outlined in the evidence. Green claims the ALJ should affirmatively make findings on the effect of obesity on his other impairments. As explained in Burch v. Barnhart, 400 F.3d 676, 682 (9th Cir. 2005), Celaya discussed whether the ALJ should have considered obesity as a disabling factor in the sequential analysis, even though it was not explicitly raised by the pro se claimant. That is not the case here. The ALJ was aware of the remand order's requirement to consider Green's obesity. Thus, as in Burch, I will turn to SSR 02-01p, Evaluation of Obesity.

In discussing how obesity is evaluated at Step Three, the Ruling states, "However, we will not make assumptions about the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment. We will evaluate each case based on the information in the case record." SSR 02-01p ¶ 7. There is no evidence in Green's case record that his obesity increased the functional limitations of his severe or nonsevere impairments. Consequently, the ALJ's statement was correct and fulfilled his duty to analyze Green's obesity. No error was committed.

IV. Step Three Finding

The listings set out at 20 C.F.R. pt. 404, Subpart. P, App. 1 are "descriptions of various physical and mental illnesses and abnormalities, most of which are categorized by the body system they affect." Sullivan v. Zebley, 493 U.S. 521, 529-30 (1990). For a claimant to show that her impairment matches one of those listed, the impairment must meet all of the specified medical criteria. Id. at 530. Alternatively, a claimant may show that her unlisted impairment is "equivalent" to a listed impairment, but to do so she must present medical findings equal in

severity to all the criteria for the one most similar listed impairment. Id. at 531. Equivalence is determined on the basis of a comparison between the "symptoms, signs and laboratory findings" about the claimant's impairment, as evidenced by the medical records, "with the medical criteria shown with the listed impairment." 20 C.F.R. § 404.1526. "Medical equivalence must be based on medical findings." 20 C.F.R. § 404.1526. "A generalized assertion of functional problems is not enough to establish disability at step three." Tackett v. Apfel, 180 F.3d 1094, 1100 (9th Cir. 1999).

Green bears the burden of proving that he has an impairment that meets or equals the criteria of a listed impairment. Burch, 400 F.3d at 683.

Green argues that the ALJ erred by finding that he did not meet Listing 1.02 for Major Dysfunction of a Joint for Any Cause. Green also contends that the ALJ erred by finding that he did not equal a Listing, particularly when the effect of his obesity on his other impairments is considered.

In addition to particular diagnoses, Listing 1.02 also requires either the "[i]nvolvement of one major peripheral weight-bearing joint (i.e., hip, knee or ankle), resulting in inability to ambulate effectively" or "[i]nvolvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively." 20 C.F.R. pt. 404, Subpt. P. App. 1, section 1.02.

> b. What we mean by inability to ambulate effectively.
>
> (1) Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. *Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent*

> *ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.* (Listing 1.05C is an exception to this general definition because the individual has the use of only one upper extremity due to amputation of a hand.)
>
> (2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. *Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail.* The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.
>
> c. What we mean by inability to perform fine and gross movements effectively. Inability to perform fine and gross movements effectively means an extreme loss of function of both upper extremities; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. To use their upper extremities effectively, individuals must be capable of sustaining such functions as reaching, pushing, pulling, grasping, and fingering to be able to carry out activities of daily living . *Therefore, examples of inability to perform fine and gross movements effectively include, but are not limited to, the inability to prepare a simple meal and feed oneself, the inability to take care of personal hygiene, the inability to sort and handle papers or files*, and the inability to place files in a file cabinet at or above waist level.

Id. at section 1.00B.2.b (emphasis added).

The Commissioner contends that there is no medical evidence of either requirement. The Commissioner argues that Green has offered no theory on how a combination of his impairments might equal a listed impairment and has cited no evidence that would justify a further review.

Green does not directly meet the Commissioner's argument based on the requirements of Listing 1.02, as they are further defined by the Listing, but instead argues that the ALJ's errors in Step Two make the analysis at Step Three unreliable.

Green uses a single cane at times but does not use a walker or two crutches or two canes. He mows the lawn on a riding mower, drives, and shops. Concerning the use of his arms, Green prepares simple meals, takes care of personal hygiene, and uses a computer.

Green has not met his burden that he meets or equals Listing 1.02 or any other listing.

V. Remedy

The court has the discretion to remand the case for additional evidence and findings or to award benefits. Smolen, 80 F.3d at 1292. The court should credit evidence and immediately award benefits if the ALJ failed to provide legally sufficient reasons for rejecting the evidence, there are no issues to be resolved before a determination of disability can be made, and it is clear from the record that the ALJ would be required to find the claimant disabled if the evidence is credited. Id. If this test is satisfied, remand for payment of benefits is warranted regardless of whether the ALJ might have articulated a justification for rejecting the evidence. Harman v. Apfel, 211 F.3d 1172, 1178-79 (9th Cir.), cert. denied, 531 U.S. 1038 (2000).

The "crediting as true" doctrine resulting in an award of benefits is not mandatory in the Ninth Circuit, however. Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003). The court has the flexibility to remand to allow the ALJ to make further determinations, including reconsidering the credibility of the claimant. Id. On the other hand, "in the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy, even though the vocational expert did not address the precise work limitations

established by the improperly discredited testimony, remand for an immediate award of benefits is appropriate." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004).

I first note that the Commissioner concedes the ALJ erred by finding that Green was capable of performing one aspect of a past composite job–the security monitor tasks–even though the past job also had more strenuous security guard work in addition to the sedentary monitor duties. The finding violates the rule against classifying occupations by their least demanding characteristics. See Vertigan v. Halter, 260 F.3d 1044, 1051 (9th Cir. 2001).

There are too many issues for me to conclude that Green is unable to perform gainful employment in the national economy, in light of the fact that no physician stated that Green has limitations precluding him from working and the ALJ properly discounted Green's credibility. Accordingly, I will remand the case for rehearing. The ALJ should reconsider the lay testimony provided by Jerri Green; should reconsider whether Green's spondylolisthesis with four fused vertebrae, trochanteric bursitis, and piriformis syndrome are severe impairments; and proceed with the sequential analysis. I also note the confusion in the ALJ's opinion concerning Green's ability to perform the customer service representative position as it was generally performed (light) and as Green actually performed it (sedentary). I ask the ALJ to clarify this if he reaches Step Four of the analysis. Finally, if the ALJ concludes that Green is disabled, I ask him to analyze the appropriate onset date. I am concerned about the fact that Green freely admits that he left his last position–on the alleged onset date–because he was laid off rather than because he could no longer perform the job due to his limitations.

**CONCLUSION**

The decision of the Commissioner is reversed. This action is remanded to the Commissioner under sentence four of 42 U.S.C. § 405(g) for rehearing to further develop the record as explained above. Judgment will be entered.

IT IS SO ORDERED.

Dated this 7th day of November, 2008.

/s/ Garr M. King
Garr M. King
United States District Judge